IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| CHM INDUSTRIES, INC. ET AL. | § | |
| | § | |
| VS. | § | CIVIL NO. 4:08-CV-454-Y |
| | § | |
| STRUCTURAL & STEEL | § | |
| PRODUCTS, INC., ET AL. | § | |

ORDER DENYING PLAINTIFF'S
APPLICATION FOR PRELIMINARY INJUNCTION

Pending before the Court is the application for preliminary injunction [doc.#26] by plaintiff CHM Industries, Inc. ("CHM"). After a review of the application, Defendants' response, and the supporting evidence accompanying both, and for the following reasons, the Court DENIES the application.

I. BACKGROUND

On February 7, 2008, plaintiffs CHM Industries, Inc. ("CHM"), and KMA Associates, LP ("KMA")(together, "Plaintiffs"), filed their complaint against defendants Structural and Steel Products, Inc. ("SSP"); Stratus Products ("Stratus"), a division of SSP; Structural and Steel Manufacturing, Ltd. ("SSPM"); Mark Wendt; Bill Shoemaker; Juan Gutierrez; and Joe Troop (together, "Defendants"). CHM is in the business of designing and manufacturing high-mast lighting applications, including the winch devices used to lower the lighting used in sporting arenas and similar lighting applications. In their complaint, Plaintiffs allege copyright infringement, misappropriation, conversion, and various other causes of action based upon Defendants' allegedly unauthorized copying and use of certain high-

mast-lighting application designs ("the copyrighted works"). Among the materials at issue are certain drawings and technical data used in Plaintiffs' production of high-mast-lighting lowering devices for the Texas Department of Transportation ("TxDOT copyrighted works"). The TxDOT copyrighted works were registered with the copyright office on February 6, 2008, one day before the original complaint alleging infringement was filed. Also among the materials forming the basis of Plaintiffs' complaint were certain drawings of Plaintiff's commercial and sports high-mast lighting applications ("commercial copyright works"). These works were registered with the copyright office on February 29, 2008. Plaintiff's first amended complaint adding claims of infringement of the commercial copyright works, as well as the claim of contributory copyright infringement, was filed March 11, 2008.

Plaintiffs allege that the events leading up to this suit began as early as May 2004, when Mark Wendt, a CHM operations administration manager, stopped working for CHM and began work for SSP. Plaintiffs allege that as the business relationship between CHM, SSP, and Stratus expanded, SSP and Stratus were privy to an increasing amount of CHM's internal information. By July 2006, Plaintiff's allege, Defendants had begun to transfer or use CHM's trade secrets and copyrighted works without permission. Plaintiffs further allege that Bill Shoemaker, at that time a CHM field service worker and product manager, sent to Wendt CHM financial and product-

2

design information that was neither relevant nor necessary to the business relationship between SSP and CHM.

Plaintiffs admit that, as of March 2006, SSP did not manufacture or sell high-mast lighting applications.  As of January 2007, however, Plaintiffs contend that Defendants had begun to recruit employees from CHM.  In March 2007, Plaintiffs allege, Shoemaker stopped working for CHM and went to work for SSP.  Also, Juan Gutierrez, a CHM draftsman responsible for drafting some of Defendants' designs at issue in this case, left CHM for SSP.  Plaintiffs aver that SSP hired former CHM employees (Wendt, Shoemaker, and Gutierrez) and used their knowledge of CHM's designs, as well as CHM design information obtained through the business relationship between SSP and CHM, to begin designing high-mast lighting applications nearly identical to those made by CHM as of April 2007.

## II.  PRELIMINARY INJUNCTION STANDARD

Under well settled Fifth Circuit precedent, a preliminary injunction is an extraordinary remedy that should not be granted unless the movant demonstrates by a clear showing: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable harm if the injunction is not granted; (3) that the threatened injury to the movant outweighs any harm to the nonmovant that may result from the injunction; and (4) that the injunction will not undermine the public interest.  *See Roho, Inc. v. Marquis*,

902 F.2d 356, 358 (5th Cir. 1990); *Lakedreams v. Taylor*, 932 F.2d 1103, 1107-10 (5th Cir. 1991) (applying the preliminary-injunction factors in the context of copyright infringement).

III. ANALYSIS

A. Likelihood of Success on the Merits

As noted above, the first element required to support granting a preliminary injunction is a demonstration of a substantial likelihood of success on the merits. *Roho, Inc.*, 902 F.2d at 358. To prevail on its copyright-infringement claims, CHM must establish (1) ownership of a valid copyright; (2) factual copying; and (3) substantial similarity. *See Armour v. Knowles*, 512 F.3d 147, 152 (5th Cir. 2007).

1. Ownership

To establish ownership of a valid copyright, CHM must demonstrate originality and copyrightability in the copyrighted works, as well as compliance with statutory formalities. *See Eng'g Dynamics, Inc. v. Structural Software, Inc.*, 26 F.3d 1335, 1340 (5th Cir. 1994). A certificate of registration may "constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate." *See* 17 U.S.C. § 410(c). Defendants claim that Plaintiffs cannot rely on the presumption of validity created by section 410 because Plaintiffs have not produced registration certificates for the copyrighted works to support their claim of

4

validity. Defendants assert that the plain language of section 410(c) requires an actual registration certificate, and thus, Plaintiffs' mere filing of an application for registration does not suffice. Plaintiffs contend that CHM complied with the applicable statutory formalities when the copyright office received the application, fee, and deposit for the TxDOT and commercial copyright works on February 6 and 29, 2008, respectively. Therefore, Plaintiffs argue, it is entitled to a "presumption" of validity under section 410(c).

In *Lakedreams v. Taylor*, the Fifth Circuit Court of Appeals addressed what is necessary to meet the "compliance with statutory formalities" aspect of the test for ownership of a valid copyright. 932 F.2d 1103, 1108 (5th Cir. 1991). There, the court stated, "a plaintiff has complied with the statutory formalities when the Copyright Office receives the plaintiff's application for registration, fee and deposit." *Id*. But at no point in the *Lakeside* opinion did the court of appeals hold that compliance with statutory formalities entitles a plaintiff to use the prima-facie-evidence provision of section 410(c). Rather, as the text of section 410(c) and the discussion in *Lakeside* indicate, section 410(c) is an alternative to proving validity through proof of originality, copyrightability and compliance with statutory requirements. *See* 17 U.S.C. § 410(c) (deeming certificate of registration *prima facie* evidence of validity); *Lakeside*, 932 F.2d at 1108 n.10 (concluding

5

that the plaintiff seeking an injunction had produced sufficient evidence to cast doubt on the presumption created by the defendant's possession of a certificate of registration); *Ready Prods., Inc. v. Cantrell*, 85 F. Supp. 2d 672, 682 (S.D. Tex. 2000) (addressing the presumption created by section 410(c) as one way to prove the elements of copyright ownership).

Plaintiffs argue that sections 410(c) and (d) should be read together. Subsection (d) provides that registrations are effective as of the date "an application, deposit, and fee" later determined to be acceptable are filed. Thus, Plaintiffs contend, the prima-facie-evidence provision of subsection (c) should also apply as of the date these steps are taken. *See In re Napster, Inc. Copyright Litig.*, 191 F. Supp. 2d 1087, 1101 (N.D. Ca. 2002) (holding pending registrations will be given the benefit of presumption of ownership under section 410(c)). Therefore, argues CHM, because it complied with these statutory requirements, it is entitled to the presumption of validity created by section 410(c).

Plaintiffs' argument is not persuasive. The *Napster* decision cited by Plaintiffs is not binding on this Court, and this Court is reluctant to ignore the plain language of section 410. By the statute's terms, the presumption stated in section 410(c) arises not as a result of effective registration, but rather because of the plaintiff's possession of a certificate of registration. If any- thing, section 410(c) must be read in conjunction with 410(a).

Under subsection 410(a), a certificate of registration is issued only after it is determined that the materials at issue are copyrightable. *See* 17 U.S.C. § 410(a). This demonstrates why an actual certificate of registration, rather than the mere application under 410(d), gives rise to a presumption of validity--only a certificate represents an evaluation of copyrightability. *See* 17 U.S.C. § 410(a), (c) & (d).

Moreover, it is not clear from the record before the Court that CHM has, in fact, complied with the statutory formalities. Thus, even if the Court were to follow Plaintiffs' argument that section 410(c)'s presumption arises as of the effective date of the copyright, it is questionable as to whether Plaintiffs are entitled to make use of it. Defendants point out that CHM failed to disclose to the copyright office that the copyrighted works are derivative works, despite the fact that the application calls for this information. The failure to disclose that the designs that are the subject of a copyright application contain pre-existing work invalidates a resulting copyright. *GB Mktg. USA Inc. v. Gerolsteiner Brunnen GmbH & Co.*, 782 F. Supp. 763, 774-75 (W.D.N.Y. 1991); *Russ Berrie & Co. v. Jerry Elsner Co.*, 482 F. Supp. 980, 988 (S.D.N.Y. 1980). In response, Plaintiffs argue that "*any* failure to denote some of the works as derivative would not invalidate those registrations." (Pls.' Resp. Br. at 3 (emphasis added) (citing *Lamps Plus, Inc. v. Seattle Lighting Fixture Co.*, 345 F.3d 1140, 1145 (9th Cir. 2003);

7

*Berg v. Symons*, 393 F. Supp. 2d 525, 542 (S.D. Tex. 2005)).) The cases cited by Plaintiffs, however, do not stand for this broad proposition. Rather, *Lamps Plus* and *Berg* support the proposition that the failure to disclose the use of pre-existing works in a copyright application may invalidate the resulting copyright. *See Lamps Plus, Inc.*, 345 F.3d at 1145; *Berg*, 393 F. Supp. 2d at 542. These cases simply limit invalidation to cases in which the applicant knowingly failed to disclose. *See Lamps Plus, Inc.*, 345 F.3d at 1145; *Berg*, 393 F. Supp. 2d at 542. Neither party addresses whether knowledge is required to invalidate a copyright in the Fifth Circuit. Further, neither party addresses whether Plaintiffs' failure to disclose was knowing, leaving the Court without guidance as to how to resolve the law and the facts on this point. Regardless, assuming knowledge is required, Plaintiffs' own arguments and evidence, as well as evidence offered by Defendants, suggest that CHM knew the copyrighted works are derivative, yet failed to disclose this to the copyright office.

As an alternative to the section 410(c) presumption, in their reply brief Plaintiffs contend they have documentation of assignment of ownership of the commercial copyrighted works from General Electric to CHM. Plaintiffs did not include this evidence with their original motion for injunction. As Defendants note, this Court generally refuses to consider arguments raised for the first time in a reply brief. *See U.S. v. Jackson,* 426 F.3d 301, 304 (5th

8

Cir. 2005) ("Arguments raised for the first time in a reply brief . . . are waived."); *Springs Indus., Inc., v. Am. Motorists Ins.*, 137 F.R.D. 238, 239 (N.D. Tex. 1991) ("[A] reply brief that presents dispositive evidence by way of new affidavits and exhibits deprives the nonmovant of a meaningful opportunity to respond." ); *Senior Unsecured Creditors Comm. of First RepublicBank Corp. v. FDIC*, 749 F. Supp. 758, 772 (N.D. Tex. 1990).

Plaintiffs respond to the general prohibition on new arguments and evidence in the reply brief in two ways. First, they argue that they are merely responding to the Defendants' arguments regarding the availability of the 410(c) presumption in this case, raised in the Defendants' response. As discussed above, however, the use of section 410(c)'s presumption is a method of proving ownership completely separate from other forms of proof, such as documentation of a transfer of interest. *See Ready Prods., Inc. v. Cantrell*, 85 F. Supp. 2d 672, 682 (S.D. Tex. 2000) (addressing the presumption created by section 410(c) as one way to prove the elements of copyright ownership); *see also* 17 U.S.C. § 204 (requiring documentation of a transfer of copyright ownership).

Alternatively, Plaintiffs ask the Court for leave to supplement the evidence submitted in support of their application. Defendants, in turn, have filed a motion alternatively seeking to strike any supplemental response or evidence filed by Plaintiffs, an opportunity to supplement their response and supporting evidence, or a

9

denial of Plaintiffs' motion for leave. As the party seeking a preliminary injunction, it was incumbent upon the Plaintiffs to come forth with arguments and evidence to support their claims from the outset. This is particularly true in light of the tenuous arguments Plaintiffs advance regarding the use of section 410(c)'s presumption on the ownership issue. Plaintiffs have failed to demonstrate why they did not argue an alternative theory of ownership or offer evidence in support of that theory in their initial brief, when ownership was so clearly at issue. Therefore, the Court concludes that Plaintiffs' motion for leave to amend should be denied, and Defendants' motions are thus moot.

Regardless of if and when the presumption of validity under section 410(c) arises, the presumption is subject to rebuttal. *Lakeside*, 932 F.2d at 1108 n.10; *Ready Prods., Inc.* 85 F. Supp. 2d at 682. Defendants assert that CHM does not own the copyrighted works and that such works lack originality. In response, Plaintiffs assert that Defendants have offered no evidence to rebut the presumption that CHM owns the commercial copyrighted works. This assertion is flawed. As discussed above, CHM's reliance on the presumption stated in section 410(c) rests on a highly questionable interpretation of the Copyright Act that this Court is disinclined to adopt. Further, it misstates the law. Even if this Court were to adopt the questionable reading of section 410(c) argued by Plaintiffs and give them the benefit of that section's presumption

of validity, Defendants need only offer some evidence to rebut the presumption. *See R. Ready Prods., Inc*. 85 F. Supp. 2d at 682; *see also Entm't Research Group v. Genesis Creative Group*, 122 F.3d 1211, 1217 (9th Cir. 1997). Defendants point to evidence within the record to rebut section 410(c)'s presumption. Specifically, as discussed above, Defendants point out that the applications themselves may be invalid due to the failure to disclose the derivative nature of the copyrighted works. Additionally, as discussed below, Defendants have provided evidence that the copyrighted works are not original.

As to originality, Defendants argue that the works at issue are derivative, in that they are based on pre-existing works. *See* 17 U.S.C. § 101 (defining "derivative work"). Defendants also assert that the copyrighted works are not original because they are nothing more than a composition of common industry elements. Thus, Defendants argue, in order to meet the originality requirements, the works must have a "distinguishable variance" from the pre-existing works. *See Norma Ribbon & Trimming v. Little*, 51 F.3d 45, 47 (5th Cir. 1995).

Again, Plaintiffs rely on the presumption of validity created by section 410(c) as proof of originality. Plaintiffs go on to argue that while the concept of a lowering device is not original, the various expression of that concept is. In support, Plaintiffs direct the Court to the sketches of three winch-plate assemblies,

11

a component part of a high-mast-lighting lowering device. The sketches are of CHM's winch-plate assembly design, as well as those of Defendants and a third competitor, Holophane. Plaintiffs simply offer these pictures, without any explanation to the Court as to how CHM's designs differ from other competitors or from designs typical of the industry as a whole. Thus, Plaintiffs have failed to show the "distinguishable variance" needed to establish originality and, as a result, have failed to establish a substantial likelihood of recovery.

## 2. Factual Copying

Plaintiffs also fail to explain how Defendants' designs are similar to CHM's designs. As part of a copyright-infringement case, the plaintiff must prove factual copying. *Armour*, 512 F.3d at 152. A plaintiff can prove factual copying by adducing circumstantial evidence showing that the defendant had access to the copyrighted work and that "the works contain similarities *probative of copying*." *Id.* (emphasis added). "Probative similarity" has been defined as such a similarity "between the two works (whether substantial or not) that, in the normal course of events, would not be expected to arise independently in the two works and that therefore might suggest that the defendant copied part of the work." *Positive Black Talk Inc. v. Cash Money Records*, 394 F.3d 357, 370 (5th Cir. 2004). Plaintiffs point to a series of fifty-four design drawings depicting

various aspects of its high-mast lighting applications and the counterparts made by Defendants. Plaintiffs then assert that these drawings show that the same drafting errors, comments, and overall appearance exist in both its design drawings and those of Defendants. Yet, despite this broad assertion, they highlight and explain only one such common error. Without more guidance as to the significance of the possible similarities between the design drawings of CHM and those of Defendants, it is unclear whether the similarities are merely the product of both parties' participating in the same industry, designing the same sort of product, and employing the same person to draft the designs, or are instead suggestive of copying. Without more clearly defined arguments and factual support by Plaintiffs on this issue, the Court cannot say that Plaintiffs have demonstrated a substantial likelihood of success on the merits in relation to the copying element of its case.[1]

### 3. Substantial Similarity

For similar reasons as those stated in the previous section, Plaintiffs have failed to establish a substantial likelihood of recovery in regard to the "substantial similarity" aspect of their

---

[1] In their response, Defendants argue that they independently created the designs at issue. Because the Court concludes Plaintiffs have failed to establish probative similarity, the Court need not address this argument. *See Positive Black Talk, Inc.*, 394 F.3d at 368 ("If a plaintiff establishes an inference of factual copying . . . the defendant can rebut that inference . . . if he can prove that he independently created the work") (citations omitted).

copyright-infringement case. *See Positive Black Talk*, 394 F.3d at 367-68 (plaintiff must prove substantial similarity as part of copyright-infringement case). An alleged copying is only actionable when the copy bears a substantial similarity to protected aspects of the original. *Peel & Co. v. Rug Mkt.*, 238 F.3d 391, 398 (5th Cir. 2001). Aspects of the work that are not protectable, such as ideas, processes, and facts, should be set aside. *See Kohus v. Mariol*, 328 F.3d 848, 855-56 (6th Cir. 2003); *see also Eng'g Dynamics*, 26 F.3d at 1342-43 (applying the abstraction-filtration-comparison method of determining copyright protection for computer programs). The court must look to the protectable elements to determine whether substantial similarity exists between the plaintiff's work and the allegedly infringing work. *See Kohus v. Mariol*, 328 F.3d 848, 855-56 (6th Cir. 2003); *see also Eng'g Dynamics*, 26 F.3d at 1342-43.

Again, Plaintiffs, without any meaningful argument or specificity, call upon the Court to visually examine a series of design drawings and thereby conclude that there is substantial similarity between their copyrighted works and Defendants' designs. Defendants argue that apparent similarities between the designs are a result of external factors, such as the nature of the industry and the standards imposed by the Texas Department of Transportation on jobs performed for it. Aspects of Plaintiffs' designs resulting from such factors are not entitled to copyright protection. *See Eng'g*

*Dynamics*, 26 F.3d at 1346-47 (noting aspects of a work dictated by industry standard are not protected); *see also Durham Indus., Inc. v. Tomy Corp.,* 630 F.2d 905, 913 (2d Cir. 1980) (noting that similarities stemming "from the commonality of the subject matter [are] not proof of unlawful copying"). Plaintiffs do not argue how Defendants' designs are substantially similar to their own in any meaningful way, let alone in a way that is not addressed by Defendants' arguments. They have, therefore, failed to establish a substantial likelihood of success on the merits as to substantial similarity.

## B. Balance of Harms

Apart from the merits of Plaintiffs' case, as the party seeking a preliminary injunction, Plaintiffs must also demonstrate that the injury it will suffer without an injunction outweighs any harm to Defendants that may result from the injunction. *See Roho,* 902 F.2d at 358. They have failed to do so. Although Plaintiffs assert that an injunction could be narrowly tailored only to reach Defendants' designs that infringe upon CHM's copyrights, Plaintiffs essentially argue that all of Defendants' designs so infringe. Thus, an injunction would mean a significant if not total halt to Defendants' high-mast-lighting manufacturing, compared with Plaintiffs' interest which is, in large part, the recovery of lost profits and additional profits generated by the Defendants due to the infringement of the

design drawings, or statutory damages. *See* 17 U.S.C. § 504(a).

### III. Conclusion

For the forgoing reasons, the Court concludes that Plaintiffs have not clearly demonstrated a substantial likelihood of success on the merits as is necessary to support an application for preliminary injunction. Further, the balance of harms weighs against granting an injunction. Accordingly, Plaintiffs' motion for leave to amend is DENIED, Defendants' motions in opposition or strike or supplement are DENIED as moot, and Plaintiffs' application for preliminary injunction is DENIED.

SIGNED October 24, 2008.

*/s/ Terry R. Means*
TERRY R. MEANS
UNITED STATES DISTRICT JUDGE